UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY A. JONES, JR.,<br><br>        Plaintiff,<br><br>v.<br><br>MARCUS POLLARD, Warden, et al.,<br><br>        Defendants. | Case No. 21-cv-162-MMA (RBM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 32] |

On January 27, 2021, Henry A. Jones, Jr. ("Plaintiff"), a state prisoner and proceeding *pro se*, filed a civil rights complaint pursuant 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights.  *See* Doc. No. 1 ("Compl.").  Defendant Warden Marcus Pollard ("Defendant") now moves to dismiss Plaintiff's claim against him.  Doc. No. 32.  Plaintiff filed an opposition, to which Defendant replied.  *See* Doc. Nos. 33, 34.  Plaintiff then filed a sur-reply, Doc. No. 6, which the Court did not authorize but nonetheless accepted while noting the discrepancy, Doc. No. 7.  Defendant filed a response to Plaintiff's sur-reply.  Doc. No. 38.  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss.

# I. BACKGROUND[1]

Plaintiff alleges that Defendant was deliberately indifferent to his health and safety in violation of the Eighth Amendment based upon the decision to use the mental health building at the R. J. Donovan Correctional Facility ("RJD"), in San Diego, California, where Plaintiff was housed,[2] to quarantine inmates infected with COVID-19, thereby exposing him to the virus, with which he was infected. *See* Compl. at 3–4, 12–14.

Specifically, Plaintiff alleges that sometime in April or May of 2020, Defendant chose to make the mental health building, the "A-1 Facility," the quarantine location for inmates infected with COVID-19. Compl. at 3, Compl. at 12 ¶ 8. Specifically, Defendant "[n]otified prison officials located in [the] Mental Health Building[] A-1 to clear out A-Section from 1-thru-10, 201-[thru]-210" to house "covid infectious inmates." Compl. at 12 ¶ 8. Plaintiff alleges that the inmates in the mental health building complained of the decision to "plac[e] infectious inmates in the Building with non-infected inmate[s]," Compl. at 3, and on May 16, 2020, they collectively contested the decision to make "the Mental health Building [a] dumping ground for covid-19 inmates," Compl. at 12 ¶ 9. On May 16, 2020, however, the collective grievance was returned, and the inmates were instructed to file "separate 602's." Compl. at 3; Compl. at 12 ¶ 10.

On June 20, 2020, Plaintiff filed an individual 602 inmate grievance log no. 13756 (the "602").[3] Compl. at 12; Compl. at 17–24 ("Pl. Ex. A"). In the 602, Plaintiff specifically complains of Defendant's "placing quarantine cov[id]-19 inmates housed in cells/building not designed to prevent the spread of cov[id]-19." Pl. Ex. A at 20.

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

[2] According to Plaintiff's filings, sometime between August and October 2021, he was moved from RJD to the California Medical Facility ("CMF") in Vacaville, California. *Compare* Doc. No. 21 *with* Doc. No. 24.

[3] Although Plaintiff initially alleges he filed his 602 on May 20, 2020, Compl. at 12 ¶ 11, he later states that he filed it "on or about June 20, 2020," Compl. at 12, which is consistent with the 602 attached as an exhibit to his Complaint, dated June 20, 2020, Pl. Ex. A at 20.

Plaintiff attached a memorandum to the 602, which is "[d]irected to" Defendant, Compl. at 12 ¶ 7, and states, in relevant part, that the greivance was premised on Defendant's "clearing out one section of the housing unit to place Covid-19 inmates in cells that share the same air vent." Pl. Ex. A at 22. Plaintiff further explained that he had underlying health conditions that put[] his life at risk." Pl. Ex. A at 22. On August 10, 2020, Plaintiff's 602 was disapproved. Pl. Ex. A at 18. Plaintiff appealed that decision, again citing his underlying health conditions and attaching medical documents. Pl. Ex. A at 19, 21, 23.

Plaintiff asserts that on December 6, 2020, while his appeal was pending,[4] an inmate infected with the virus was placed in "cell 227" and was later removed several hours later. Compl. at 3; Compl. at 12 ¶ 17. Plaintiff alleges that the following day, "99% of the inmates were infected with covid-19." Compl. at 3; *see also* Compl. at 12 ¶ 17 ("Nurse's [sic] came [] around, notifying all the inmates housed in A-1[] that they have been infected with covid-19.").

Plaintiff contracted and tested positive for COVID-19 on December 8, 2020. Compl. at 32 ("Exhibit D"). Plaintiff asserts that on December 11, 2020, he experienced "chest pains, racing heart beats" and was taken to medical for an EKG, which showed "no changes" to his heart. Compl. at 13 ¶¶ 21–22.

Plaintiff asserts that while he, as well as the other inmates in the mental health building, "pleaded to [the] administration not to place infectious inmates in the same area," Defendant "ignored [the] inmates'[] pleas," Compl. at 3, and instead placed inmates infected with COVID-19 in the "general population" rather than in isolation until they were no longer infectious. Compl. at 3. Plaintiff claims that Defendant's decision to quarantine COVID-19–infected inmates in the mental health building constituted a deliberate indifference to his health and safety in violation of the Eighth Amendment.

---

[4] While the appeal decision is dated November 16, 2020, Pl. Ex. A at 17, Plaintiff alleges that he did not receive the decision until January 20, 2020. Compl. at 12.

*See* Compl. at 3–4.  He alleges that Defendant personally made the housing decision knowing it would expose the inmates to COVID-19 and knowing there was no treatment for the virus.  Compl. at 3–4.

In his Complaint, Plaintiff names Defendant as well as Secretary of the California Department of Corrections and Rehabilitation ("CDCR") Kathleen Allison and "Doctor's and Other's R.J.D. Donovan" as John Doe Defendants 1–6.  Compl. at 2.  In its Screening Order, the Court dismissed the Doe Defendants for failure to plead any factual allegations against them.  Doc. No. 10 at 4.  The Court found that Plaintiff sufficiently pleaded an Eighth Amendment claim against Defendant and Secretary Allison to withstand screening under 28 U.S.C. § 1915A and directed Plaintiff to serve Defendant and Secretary Allison.  *Id.* at 5.  Ultimately, Plaintiff served Defendant and simultaneously filed a "motion for "voluntary dismissal" of Secretary Allison.  Doc. No. 31.  Secretary Allison has not been served to date.  *See* Docket.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face."  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

*Pro se* litigants "must be ensured meaningful access to the courts." *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc). When the plaintiff is appearing *pro se*, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *See Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2001); *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). In giving liberal interpretation to a *pro se* complaint, however, the court is not permitted to "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). The court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987)).

### III. REQUEST FOR JUDICIAL NOTICE

Defendant asks the Court to take judicial notice of nine exhibits—five exhibits submitted in support of his motion to dismiss: (1) transcript from the Senate Public Safety Committee Senate Hearing on COVID-19 in California State Prisons dated July 1, 2020; (2) Governor Gavin Newsom's March 4, 2020 Executive Order; (3) "COVID-19 Science Update" webpage from the Centers for Disease Control and Prevention website; (4) online article from U.C. Davis Health; and (5) April 17, 2020 Northern District of California order in Case No. 01-CV-01351-JST, and four exhibits submitted in reply: (A) docket in Case No. 21-cv-00055-CAB (BGS); (B) "Tracking COVID-19 in California" webpage from the California state website; (C) "WHO Coronavirus" webpage from the World Health Organization website; and (D) "Population COVID-19 Tracing" webpage from the California CDCR website.

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint . . . ." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002)) (discussing that a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment); *see also* Fed. R. Civ. P. 12(d) (explaining that if the court considers other materials, a motion brought pursuant to Rule 12(b)(6) or (c) is converted into a motion for summary judgment under Rule 56). However, the Court may, without converting the motion to dismiss to one for summary judgment, "take judicial notice of matters of public record," *Khoja*, 899 F.3d at 999 (quoting *Lee*, 250 F.3d at 689), and of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125–26; *see also* Fed. R. Evid. 201.

Judicial notice under Federal Rule of Evidence 201 permits a court to take notice of undisputed facts in matters of public record. *See Khoja*, 899 F.3d at 999. A court may not take judicial notice of disputed facts contained in such public records. *Id.* A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b).

The Court finds that all nine exhibits are proper for judicial notice. Exhibits 1, 2, 5, and A are matters of public record. *See, e.g.*, *Hayes v. Woodford*, 444 F. Supp. 2d 1127, 1136–37 (S.D. Cal. 2006) (Courts may take judicial notice of their own records, and may also take judicial notice of other court proceedings if they "directly relate to matters before the court"); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) ("The court may take judicial notice of the existence of unrelated

court documents, although it will not take judicial notice of such documents for the truth of the matter asserted therein."); *Lopez v. Bank of Am., N.A.*, 505 F. Supp. 3d 961, 970–71 (N.D. Cal. 2020) (finding that publicly available congressional records, including transcripts of congressional hearings, are proper for judicial notice). Moreover, exhibits 3, 4, B, C, and D are publicly available website pages. *See, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of information contained on a government website); *In re Tourism Assessment Fee Litig.*, No. 08cv1796-MMA(WMc), 2009 U.S. Dist. LEXIS 133339, at *12 (S.D. Cal. Feb. 19, 2009) (taking judicial notice of various website pages because "[i]n this new technological age, official government or company documents may be judicially noticed insofar as they are available via the worldwide web") (internal citation and quotation marks omitted). The Court finds that none of the exhibits are subject to reasonable dispute, nor can their sources be reasonably questioned. Therefore, the Court **GRANTS** Defendant's request and takes judicial notice of the nine exhibits referenced above.

## IV. DISCUSSION

As an initial matter, it is clear that Plaintiff does not intend to prosecute this action against Secretary Allison. He has not timely served her and instead requests to voluntarily dismiss her from the case. *See* Doc. No. 31. Accordingly, the Court **DISMISSSES** Plaintiff's claim against Secretary Allison.

As noted above, Plaintiff brings an Eighth Amendment claim against Defendant based upon Defendant's alleged decision to house COVID-19 infected inmates at RJD's mental health facility.

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corr.*

*Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at 832-33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)).

## A.   Supervisory Liability and Causation

Defendant first argues that Plaintiff's claim fails because Plaintiff "expressly alleg[es] that Warden Pollard's involvement was limited to his supervisory responsibilities" and that Plaintiff does not make individualized allegations as to him. Doc. No. 32-1 at 13.

Because "[a] plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights," *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), there is no respondeat superior liability under 42 U.S.C. § 1983, *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . §1983 suits, [Plaintiff] must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution."). Thus, supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied* 442 U.S. 941, 99 S. Ct. 2883, 61 L. Ed. 2d 311 (1979). In order to sufficiently plead causation as to a supervisory official under § 1983, a plaintiff must allege their "personal involvement in the constitutional deprivation, or . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation marks omitted)).

Here, although Defendant holds a supervisory position, Plaintiff sufficiently pleads causation. Plaintiff alleges that in April or May of 2020, Defendant "chose to make the mental health building" the quarantine location for infectious inmates." Compl. at 3;

Compl. at 12 ¶ 8.  Moreover, Plaintiff further alleges that this decision was deliberately indifferent to his substantial risk of serious harm from contracting the virus.  *See, e.g.*, Compl. at 13 ¶ 25.  Thus, while Plaintiff does not allege that Defendant personally participated in the movement and placement of COVID-19 infected inmates, he pleads a plausible causal connection between Defendant's decision to quarantine the sick inmates in the mental health building—the wrongful conduct—and the alleged Eighth Amendment constitutional violation.  Therefore, the Court **DENIES** Defendant's motion to dismiss on the basis that Plaintiff fails to adequately plead supervisory liability or causation.

## B.    Contradictory and Vague Allegations

Next, Defendant argues that Plaintiff's allegations are internally inconsistent.  Doc. No. 32-1 at 16.  Specifically, Defendant asserts that "Plaintiff is unclear about whether the decision to identify and isolate was the problem or solution."  *Id.* at 15.  While it is true, generally, that the Court "need not" accept inconsistent allegations in a complaint as true on a motion to dismiss, *Walsh v. Sacramento*, No. 2:13-cv-2077 MCE KJN PS, 2014 U.S. Dist. LEXIS 128095, at *46 n.7 (E.D. Cal. Sep. 11, 2014), this principle does not call on the Court to disregard virtually the entirety of this *pro se* Plaintiff's Complaint because it includes a few allegations that muddle the relevant facts.

The Court previously summarized the factual and legal basis for Plaintiff's claim in its Screening Order:

> Plaintiff alleges that as a result of the Defendants' decision to use the mental health facility at RJD, where he is housed, as a quarantine unit for all RJD inmates infected with the Covid-19 virus, he became infected with the virus two and one-half weeks before he filed his Complaint, which he claims constituted deliberate indifference to his health and safety in violation of the Eighth Amendment.

Doc. No. 10 at 2–3 (citing Compl. at 3–4).  The fact that Plaintiff elsewhere pleaded facts, such as that RJD officials were supposed to "identify & isolate infectious inmates,"

Compl. at 3, does not contradict or undermine his relevant allegations.  Instead, a liberal construction of Plaintiff's claim is that Defendant did not properly isolate infected inmates and instead quarantined them in the building where Plaintiff was housed, resulting in him contracting the virus.  Therefore, the Court **DENIES** Defendant's motion on this basis.

Defendant also argues that Plaintiff's allegations are too vague and leave essential details omitted.  Doc. No. 32-1 at 16.  Defendant does not explain why Plaintiff is required to plead "what guidance Warden Pollard failed to follow[ or] how he failed to follow the guidance." *Id.*  As noted above, Plaintiff pleads a direct theory of liability due to Defendant's decision to house inmates infected with COVID-19 in the mental health building at RJD.  Defendant does not provide, and the Court is not aware of, any authority requiring a plaintiff to plead that such an allegedly unconstitutional action was inconsistent with guidance in order to state a claim under § 1983.  Moreover, Plaintiff provides sufficient details to put Defendant on notice of his claim.  Plaintiff pleads that: (1) Defendant made the decision in April or May of 2020 to quarantine inmates infected with COVID-19 in the mental health building; (2) as early as May 16, 2020, Defendant was on notice that the inmates in that building, collectively, took issue with the decision; (3) on June 20, 2020, Plaintiff personally complained of the decision via his 602; (4) on December 7, 2020, a COVID-19 infected inmate was placed in this building, where Plaintiff was housed at the time; and (5) as a result, Plaintiff contracted COVID-19 on December 8, 2020.  Compl. at 3.  Accordingly, the Court finds that Plaintiff has pleaded sufficient facts, including dates, to put Defendant on notice of his claim.  The Court therefore **DENIES** Defendant's motion on this basis.

## C. Deliberate Indifference

Next, Defendant argues that Plaintiff fails to plead deliberate indifference.  Doc. No. 32-1 at 15.  Threats to both an inmate's safety and health are subject to the Eighth Amendment's demanding deliberate indifference standard.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016).  Under

the deliberate indifference standard, a prison official violates the Eighth Amendment when two requirements are met.  First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety."  *Id.* (quoting *Wilson*, 501 U.S. at 302–03).  As to the subjective requirement, a prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

     *1.*    *Objective Requirement*

Defendant argues that Plaintiff fails to show that his confinement in housing with inmates infected with COVID-19 was sufficiently serious to satisfy the Eighth Amendment's objective requirement.  Doc. No. 32-1 at 17.  However, as many courts have acknowledged, COVID-19 poses a substantial risk of serious harm.  *See, e.g.*, *Plata v. Newsom*, 445 F. Supp. 3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners.); *see also Wright v. Sherman*, No. 1:21-cv-01111-SAB (PC), 2022 U.S. Dist. LEXIS 20177, at *7 (E.D. Cal. Feb. 3, 2022).  Moreover, as to the objective element the Ninth Circuit has stated

> For the objective factor, inmates must establish "that it is contrary to current standards of decency for anyone to be . . . exposed against his will" to the hazard. This "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused." Instead, courts must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," meaning that the risk "is not one that today's society chooses to tolerate."

*Hines v. Youseff*, 914 F.3d 1218, 1229 (9th Cir. 2019) (internal citations omitted).

The Court cannot say, at this premature stage of the litigation, that the decision to house inmates infected with COVID-19 in the mental health building among non-infected inmates is not "sufficiently serious." *Cf. Sanford v. Eaton*, No. 1:20-cv-00792-BAM (PC), 2021 U.S. Dist. LEXIS 59949, at *17 (E.D. Cal. Mar. 29, 2021) ("The transmissibility of the COVID-19 virus in conjunction with Plaintiff's living conditions, which he alleges were overcrowded and poorly ventilated, are sufficient to satisfy the objective prong, i.e., that Plaintiff was 'incarcerated under conditions posing a substantial risk of serious harm.'"). Instead, a reasonable person could conclude that it was contrary to the standards of decency. Therefore, the Court **DENIES** Defendant's motion as to the Eighth Amendment's objective requirement.

*2.   Subjective Requirement*

To satisfy the subjective standard, "[a] prison official may be held liable under the Eighth Amendment for acting with 'deliberate indifference' to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 825. Under this standard, "prison officials who actually kn[o]w of a substantial risk to inmate health or safety may be found free from liability if they respond[] reasonably to the risk, even if the harm ultimately [i]s not averted." *Id.* at 844. *Farmer* makes clear that deliberate indifference "is shown adequately when a prison official is aware of the facts from which an inference could be drawn about the outstanding risk, and the facts permit us to infer that the prison official *in fact drew that inference*, but then consciously avoided taking appropriate action." *Disability Rts. Mont., Inc. v. Batista*, 930 F.3d 1090, 1101 (9th Cir. 2019) (emphasis added).

This case comes down to the difference between ordinary and heightened exposure to a serious and highly communicable virus. As such, the present facts are distinguishable from the cases to which Defendant cites. Those cases involved allegations merely amounting to the general failure to control the spread of COVID-19. *Booth v. Newsom*, No. 2:20-cv-1562 AC P, 2020 U.S. Dist. LEXIS 215148, at *4, *7

(E.D. Cal. Nov. 16, 2020) (*sua sponte* dismissing Eighth Amendment claims against the Governor for the "failure of [the prison] to provide adequate means for prisoners to reduce their exposure to COVID-19"); *Blackwell v. Covello*, No. 2:20-cv-1755 DB P, 2021 U.S. Dist. LEXIS 45226, at *8 (E.D. Cal. Mar. 9, 2021) (dismissing Eighth Amendment claim against warden premised upon "generalized allegations that the warden has not done enough to control the spread"); *Benitez v. Sierra Conservation Ctr.*, No. 1:21-cv-00370-BAM (PC), 2021 U.S. Dist. LEXIS 170489, at *11 (E.D. Cal. Sep. 7, 2021), *report and recommendation adopted by* 2021 U.S. Dist. LEXIS 193507 (E.D. Cal. Oct. 6, 2021) (finding that "in order to state a cognizable Eighth Amendment claim against the warden [ ], Plaintiff must provide more than generalized allegations that the warden [ ] ha[s] not done enough regarding control the spread"); *Sanford v. Eaton*, No. 1:20-cv-00792-BAM (PC), 2021 U.S. Dist. LEXIS 59949, at *15 (E.D. Cal. Mar. 29, 2021) (finding that "in order to state a cognizable Eighth Amendment claim against the warden, associate wardens and the other defendants named, Plaintiff must provide more than generalized allegations that the warden, associate wardens and other defendants have not done enough regarding overcrowding to control the spread").

Plaintiff does plead Defendant's general failure to control the spread. *See* Compl. at 11 ¶ 5. And to the extent Plaintiff's claim is premised upon Defendant's alleged failure to control the spread of COVID-19 within RJD, generally, including the allegations pertaining to the failure to provide appropriate masks, *see* Compl. at 15 ¶ 46, the Court **DISMISSES** his claim. That said, Plaintiff's claim is not solely based upon Defendant's general failure to "do enough to control the spread of the disease within the entire prison." Doc. No. 32-1 at 19. As discussed above, Plaintiff alleges that Defendant made the affirmative decision—inferentially, as part of the larger COVID-19 response plan—to quarantine and house inmates infected with the virus among non-infected inmates in the mental health building thereby creating a heightened risk of infection to those housed there. Accordingly, the line of recent district court cases cited above does not support wholesale dismissal of Plaintiff's Complaint.

1   While the Court is required to liberally interpret Plaintiff's Complaint, it is not

2   permitted to "supply essential elements of the claim that were not initially pled." *Ivey*,

3   673 F.2d at 268.  This analysis involves a close examination of the line between

4   interpretation and supplementation.  While Plaintiff pleads, formulaically, the deliberate

5   indifference standard, he does not explicitly plead that Defendant knew that placing

6   inmates infected with COVID-19 in the mental health building would pose a serious risk

7   of infection to the non-infected inmates housed there and nonetheless proceeded in the

8   face of this risk.  However, the Court must liberally interpret Paragraph 25 of the

9   Complaint, which reads:

10

11   "Defendant acted with [d]eliberate indifference, and his action knowing
      about a substantial risk of serious harm."

12

13   Compl. at 13 ¶ 25.  In interpretating this allegation, the Court looks to the rest of the

14   Complaint, wherein he pleads the following allegations relevant to the subjective element

15   of his claim:

16

17   • "We was told to file separate 602's, and they never responded, still placing

18     infectious inmate in the unit."  Compl. at 3.

19   • [B]ecause prison officials ignored inmates'[] pleas not to place in the same

20     area inmates threatening harm to him . . . [w]e pleaded to administration not

21     to place infectious inmates in the [s]ame area d[ue] to the spread, and the

22     seriousness of covid-19."  Compl. at 3.

23   • "the Warden . . . had constructive knowledge of a [s]erious infectious

24     disease and did nothing to stop it.  Nor had a disease[] control polic[y] to

25     prevent the wide spread, placing all inmates located in Building A-1 at

26     risk."  Compl. at 11 ¶ 5.

27   • "[Plaintiff] [f]iled 602 on 6-20-2020 & attached a personal

28     MEMORANDUM, [d]irected to the Warden Marcus Pollard . . . [a]bout

Warden [p]lacing Covid19 inmates in the Mental Health Building, exposing
[]non infected inmates."  Compl. at 12 ¶ 7.

- "Defendant M. Pollard knew about a particular problem th[r]ough 602's
  grievances that [were] filed by more than 10[] inmates."  Compl. at 15 ¶ 53.

The Court therefore finds that it can reasonably interpret Plaintiff's Complaint to
read that Defendant made the housing decision while aware of the heightened risk of
COVID-19 infection to those living in the mental health building and nonetheless ignored
the risk.  Moreover, as Plaintiff correctly pleads, Compl. at 4, the Court can also
reasonably infer for the purpose of this motion to dismiss that Defendant was aware of
the risk because it is obvious.  *See Farmer*, 511 U.S. at 842 (noting that "a factfinder may
conclude that a prison official knew of a substantial risk from the very fact that the risk
was obvious").

Relevantly, Plaintiff pleads that the inmates collectively contested the decision.
Compl. at 12 ¶ 9.  Unsurprisingly, there is at least one additional case before this Court
involving Defendant's decision to house infected inmates in the mental health building at
RJD.  Both Plaintiff and Defendant inform the Court of the case *Williams v. Pollard*,
No. 21-v-0055-CAB (BGS).  *See* Doc. No. 3 at 6; Doc. No. 34 at 4.  In that case, this
Court found that the plaintiff had sufficiently pleaded Defendant's personal knowledge of
the allegedly improper housing of infected inmates in the mental health building at RJD.
*See Williams v. Pollard*, No. 21cv0055-CAB (BGS), 2022 U.S. Dist. LEXIS 10666, at
*29 (S.D. Cal. Jan. 19, 2022).[5]  The facts of this case as compared to *Williams* differ in
many ways.  Importantly, the *Williams* plaintiff offered his 602, which Defendant
personally signed.  *Id.*  The Court does not impute Defendant's alleged knowledge as to
the plaintiff's 602 in *Williams* to Plaintiff's 602 because the latter does not appear to be

---

[5] Although Defendant only requests judicial notice of a prior order in this case, the Court can and does
take judicial notice of the case and its entire docket, which has since evolved.  *See* Fed. R. Evid. 201.

personally signed.  However, Defendant notably does not argue that he was unaware that his COVID-19 housing decision would place the non-infected inmates there at an obvious heightened risk.  Moreover, the housing decision remained in effect as of at least December 2020, many months after the collective grievance and Plaintiff's 602.  Therefore, for this reason as well, the Court can reasonably infer that Defendant ignored the risk.

Defendant also argues that Plaintiff fails to satisfy the subjective requirement because his Complaint is "devoid of any facts sufficient to plausibly suggest Pollard was personally aware of his underlying medical vulnerabilities." Doc. No. 32-1 at 19.  It is true that Plaintiff does not plead Defendant was personally aware of Plaintiff's underlying medical conditions.  However, as noted above, and at this stage of the litigation, the increased risk of COVID-19 infection due the placement of infected inmates among those not infected alone, absent underlying medical conditions, is objectively, sufficiently serious.  So even without this specific knowledge, Plaintiff's allegations are sufficient to support the inference that Defendant knew of the heightened risk to Plaintiff of contracting COVID-19 and disregarded that risk.  Accordingly, the Court **DENIES** Defendant's motion on this basis.

## D.    Qualified Immunity

Defendant also argues that Plaintiff's claim is barred by qualified immunity.  Doc. No. 32-1 at 21.  "Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Long v. City & Cty. of Honolulu*, 511 F.3d 901, 905–06 (9th Cir. 2007).  The inquiry is two-fold.  First, the Court must determine whether the plaintiff has alleged the deprivation of an actual constitutional right.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Second, the Court must determine whether the right was clearly established.  *See id.*

As noted above, Plaintiff sufficiently alleges an Eighth Amendment violation and

so qualified immunity is not appropriate at this time under the first prong.  Turning to the second prong, "[f]or a right to be clearly established, case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017) (citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (explaining that "existing precedent must have placed the statutory or constitutional question beyond debate . . . [because] immunity protects all but the plainly incompetent or those who knowingly violate the law") (internal quotation marks and citation omitted)).  The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Defendant argues that "[t]here is no binding precedent, nor a robust consensus of persuasive authority, establishing that state prisoners have an Eighth Amendment right to a particular COVID-19 response, nor do they have a right to be free from an unquantifiable increase in the risk of COVID-19 exposure in their institution."  Doc. No. 32-1 at 21.  However, existing precedent clearly establishes the right of an individual in custody to protection from heightened exposure to a serious communicable disease.  *See, e.g.*, *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (finding prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease" under the Eighth Amendment); *see also Hutto v. Finney*, 437 U.S. 678, 682–83 (1978) (affirming a finding of an Eighth Amendment violation where a facility housed individuals in crowded cells with others suffering from infectious diseases, such as Hepatitis and venereal disease, and the individuals' "mattresses were removed and jumbled together each morning, then returned to the cells at random in the evening"); *Andrews v. Cervantes*, 493 F.3d 1047, 1050 (9th Cir. 2007) (recognizing a cause of action under the Eighth Amendment and 42 U.S.C. § 1983 for an alleged policy of not screening inmates for infectious diseases—HIV, Hepatitis C, and Heliobacter pylori— and for housing contagious and healthy individuals together during a known "epidemic of

hepatitis C"); *Maney v. Brown*, No. 6:20-cv-00570-SB, 2020 U.S. Dist. LEXIS 235447, at *17 (D. Or. Dec. 15, 2020) ("[T]he law is clearly established that individuals in government custody have a constitutional right to be protected against a heightened exposure to serious, easily communicable diseases, and the Court finds that this clearly established right extends to protection from COVID-19."); *Trevizo v. Webster*, No. CV 17-5868-MWF (KS), 2018 U.S. Dist. LEXIS 227476, at *11 (C.D. Cal. Sept. 6, 2018) ("It is well accepted that such 'substantial risks of harm' include 'exposure of inmates to a serious, communicable disease[,]'" including MRSA) (citing *Helling*, 509 U.S. at 33); *see also Loftin v. Dalessandri*, 3 F. App'x 658, 663 (10th Cir. 2001) (recognizing an Eighth Amendment claim for knowingly housing the defendant in a cell with individuals who had tested positive for tuberculosis). Moreover, "[f]or purposes of qualified immunity, that legal duty need not be litigated and then established disease by disease or injury by injury." *Maney v. Brown*, No. 6:20-cv-00570-SB, 2020 U.S. Dist. LEXIS 235447, at *17 (D. Or. Dec. 15, 2020) (quoting *Estate of Clark v. Walker*, 865 F.3d 544, 553 (7th Cir. 2017)).

Defendant also argues that he is entitled to qualified immunity because he and officials in his position "could have reasonably believed that their actions were constitutional so long as they complied with the orders from the Receiver and the *Plata* court." Doc. No. 32 at 22 (quoting *Hines v. Youseff*, 914 F.3d 1218, 1231 (9th Cir. 2019)). However, in *Hines*, the Ninth Circuit specifically noted that the officials' entitlement to qualified immunity rested on two facts: (1) that "a federal court supervised the officials' actions"; and (2) that "there is no evidence that 'society's attitude had evolved to the point that involuntary exposure' to such a risk 'violated current standards of decency,' especially given that millions of free individuals tolerate a heightened risk of Valley Fever by voluntarily living in California's Central Valley and elsewhere." *Id.* As to the first, while the Court takes judicial notice of the exhibits identified above, in particular, the document pertaining to the CDCR federal receivership under *Plata*, it declines to convert this motion to one for summary judgment. The issue of whether

Defendant's decision was made under the supervision of the federal Receiver, and if so, whether that supervision impacts the reasonableness of the belief that the conduct was lawful thus triggering qualified immunity should be more appropriately addressed at a later stage.[6] *See O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (explaining that when qualified immunity is asserted on a Rule 12(b)(6) motion to dismiss, "dismissal is not appropriate unless [the Court] can determine, based on the complaint itself, that qualified immunity applies"); *see also Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) ("If the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then" granting qualified immunity on a motion to dismiss is prohibited) (quoting *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 872 (9th Cir. 1992)).  Further, the second is inapplicable here because COVID-19 is highly contagious, is not bound to a geographic area, and a societal consensus has emerged regarding its danger.  Accordingly, the Court **DENIES** Defendant's motion as to the qualified immunity defense without prejudice to Defendant raising the defense at a later stage of the litigation.

## E.   PLRA's Physical Injury Requirement

According to the Complaint, Plaintiff seeks injunctive relief in the form of a transfer to another prison as well as the COVID-19 vaccine.[7]  Compl. at 7–8.  Additionally, Plaintiff seeks compensatory damages in the amount of $200,000,000 as well $1 million in punitive damages.  Compl. at 7; Compl. at 15 ¶ B.  Defendant argues that, to the extent Plaintiff is permitted to proceed with his claim, he should not be entitled to pursue compensatory damages.  Doc. No. 32-1 at 24.

---

[6] Moreover, *Plata v. Newsom*, 445 F. Supp. 3d 557, 566 (N.D. Cal. 2020) does not require the Court to make a finding as to qualified immunity at this time because, among other things, the court, while reviewing the CDCR's COVID-19 response, did not specifically address or condone any decisions to quarantine COVID-19 infected inmates by housing them with non-infected inmates.

[7] As mentioned *supra* note 2, Defendant has already been transferred to another facility.  It is unclear if Plaintiff seeks further transfer.  Moreover, it is unclear if Plaintiff has had the opportunity to receive or if he has in fact received the COVID-19 vaccine as of the date of this Order.

Pursuant to the Prison Litigation Reform Act, a plaintiff must allege more than mental or emotional injury.  42 U.S.C. § 1997e(e).  The Ninth Circuit has interpreted section 1997e's "physical injury" requirement to mean that it "need not be significant but must be more than *de minimis*."  *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002).  The Ninth Circuit has clarified that "[t]he 'physical injury' requirement of 42 U.S.C. § 1997e(e) does not apply to claims for compensatory, nominal, or punitive damages."  *Renteria v. Williams*, 340 F. App'x 382, 383 (9th Cir. 2009) (citing *Oliver*, 289 F.3d at 630).

Plaintiff's prayer for compensatory and punitive damages premised on deliberate indifference to his health, and not on any alleged mental or emotional injuries, is not barred by 42 U.S.C. § 1997e(e).  *See Bryant v. Newland*, 64 F. App'x 58, 59 (9th Cir. 2003) (citing *Oliver*, 289 F.3d at 629–30); *see also Williams*, 2022 U.S. Dist. LEXIS 10666, at *24 (citing *Oliver*, 289 F.3d at 630) (holding that "§ 1997e(e) applies only to claims for mental and emotional injury" and does not bar claims for punitive and nominal damages which remain available to redress constitutional violations even in the absence of more than *de minimis* physical injury).  Further, Plaintiff alleges that he contracted COVID-19, suffered from chest pains, and racing heartbeats necessitating medication.  Compl. at 13 ¶¶ 21, 27.  This is sufficient at this stage to allege a physical injury that is more than *de minimis*.[8]  *Cf. Chung v. Carnival Corp.*, No. 20-cv-4954DDP (GJSx), 2021 U.S. Dist. LEXIS 149147, at *12 (C.D. Cal. Aug. 9, 2021) (finding as to the "zone of danger" test in a claim for negligence that "Plaintiffs who allege that they tested positive or that they exhibited symptoms of COVID-19 necessarily allege physical injury— contracting the disease and injury from the disease. These Plaintiffs sufficiently allege an injury for which they could recover") (citing *Archer v. Carnival Corp. & PLC*, No. 2:20-

---

[8] Plaintiff's sur-reply focuses on his injuries, seemingly arguing that they are physical.  *See* Doc. No. 6. Plaintiff also appears to alternatively request leave to amend, *see id.* at 2, presumably to include new information as to his "ongoing" injuries, to which Defendant opposes, *see* Doc. No. 38.  However, in light of the Court's ruling above, the Court **DENIES** Plaintiff's request for leave to amend as moot.

CV-04203-RGK-SK, 2020 U.S. Dist. LEXIS 236435, at *7 (C.D. Cal. Nov. 25, 2020)). Therefore, Plaintiff's claim based upon mental and emotional injury, *see* Compl. at 14 ¶ 40, may proceed as well. *See Oliver*, 289 F.3d at 630 ("To the extent that appellant has actionable claims for compensatory, nominal or punitive damages—premised on violations of his [constitutional] rights, and not on any alleged mental or emotional injuries—[his] claims are not barred by § 1997e(e)"). Accordingly, the Court **DENIES** Defendant's motion on this basis.

## V. CONCLUSION

For the foregoing reasons, the Court **DISMISSES** Secretary Allison from this action with prejudice and **DIRECTS** the Clerk of Court to update the docket of this action accordingly. Further, the Court **GRANTS IN PART** Defendant's motion and **DISMISSES** Plaintiff's claim to the extent it is based upon Defendant's general failure to control the spread of COVID-19 in RJD, generally. The Court **DENIES** the remainder of Defendant's motion.

**IT IS SO ORDERED**.

Dated: March 9, 2022

HON. MICHAEL M. ANELLO
United States District Judge