UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY A. JONES, JR.,<br><br>                         Plaintiff,<br><br>v.<br><br>MARCUS POLLARD, Warden; KATHLEEN ALLISON, Secretary of the California Department of Corrections and Rehabilitation; and JOHN DOES 1-6,<br><br>                         Defendants. | Case No.: 21CV162-GPC(BGS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[DKT. NO. 90.]** |

Before the Court is Defendant's motion for summary judgment filed on June 2, 2023. (Dkt. No. 90.) Plaintiff filed an opposition on June 23, 2023. (Dkt. No. 95.) Defendant filed a reply on July 6, 2023. (Dkt. No. 97.) The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the parties' briefs, supporting documentation and the applicable law, the Court GRANTS Defendant's motion for summary judgment.

/ / /

/ / /

/ / /

/ / /

**Procedural Background**[1]

On January 27, 2021, Henry A. Jones, Jr. ("Plaintiff"), a state prisoner proceeding pro se, filed a civil rights complaint pursuant 42 U.S.C. § 1983 alleging Defendants Marcus Pollard, Warden ("Defendant" or "Warden Pollard"), and Kathleen Allison, Secretary of the California Department of Corrections and Rehabilitation ("Secretary Allison"), were deliberately indifferent to his health and safety in violation of the Eighth Amendment as a result of their decision to use the mental health building at R.J. Donovan Correctional Facility ("RJD") where he was housed, to quarantine inmates infected with COVID-19, thereby exposing him to the virus, with which he was infected.  (Dkt. No. 1, Compl.)  On February 4, 2021, the Court denied Plaintiff's motion to proceed in forma pauperis because he had accumulated at least three "strikes" as defined by 28 U.S.C. § 1915(g) and the complaint failed to plausibly allege that he faced "imminent danger of serious physical injury" at the time of filing, and dismissed the action for failing to pay the filing fee.  (Dkt. No. 5.)  Plaintiff paid the filing fee on May 28, 2021.  (Dkt. No. 9.)  On June 16, 2021, the Court issued an order screening the complaint pursuant to 28 U.S.C. § 1915A, dismissed John Doe Defendants and directed the Clerk of Court to issue a summons pursuant to Federal Rule of Civil Procedure 4(b).  (Dkt. No. 10.)  In the order, the Court found the complaint contained a plausible claim sufficient to survive the "low threshold" set for *sua sponte* screening under 28 U.S.C. § 1915A(b) as to Defendants Warden Pollard and Secretary Allison.  (*Id*. at 3.[2])  On December 1, 2021, Plaintiff filed a notice of voluntary dismissal as to Secretary Allison.  (Dkt. No. 31.)

On December 16, 2021, Warden Pollard filed a motion to dismiss for failure to state a claim which was fully briefed.  (Dkt. Nos. 32, 33, 34.)  On March 9, 2022, the Court granted in part and denied in part Defendant's motion to dismiss.  (Dkt. No. 39.)

---

[1] Plaintiff has filed a number of motions during the pendency of this case.  The Court only recounts the filings and orders relevant to the instant motion for summary judgment.
[2] Page numbers are based on the CM/ECF pagination.

The Court dismissed Secretary Allison with prejudice and granted the motion to dismiss to the extent Plaintiff's claim was based on Defendant's failure to control the spread of COVID-19 in RJD, generally. (*Id.* at 21.) On the Eighth Amendment claim based on Warden Pollard's decision to quarantine COVID-19 infected inmates at RJD's mental health facility, the Court concluded Plaintiff sufficiently alleged a causal connection between Warden Pollard's decision to quarantine COVID-19 infected inmates and the Eighth Amendment constitutional violation. (*Id.* at 9.) Further, it found that Plaintiff had sufficiently alleged facts to support the inference that Pollard knew of the heightened risk of Plaintiff contracting COVID-19 and disregarded that risk. (*Id.* at 16.)

On April 12, 2023, the case was transferred to the undersigned judge. (Dkt. No. 78.) On June 2, 2023, Defendant Pollard filed the pending motion for summary judgment which is fully briefed. (Dkt. Nos. 90, 95, 97.) The remaining claim in the complaint subject to summary judgment is the Eighth Amendment claim that Warden Pollard was deliberately indifferent to Plaintiff's health and safety[3] based on his decision to designate the mental health building at RJD, where Plaintiff was housed, to quarantine inmates

---

[3] Plaintiff also uses the terms alleging deliberate indifference to his "serious medical needs" but his claims are, in fact, an Eighth Amendment violation based on deliberate indifference to his health and safety. (*See* Dkt. No. 1, Compl.; Dkt. No. 95.) In prior orders, the Court has addressed his claims as ones for health and safety. (Dkt. Nos. 10, 39.) However, to the extent Plaintiff alleges an Eighth Amendment claim concerning deliberate indifference to his "serious medical needs", he has failed to establish an Eighth Amendment violation related to medical care. Under this claim, an inmate shows that prison officers are deliberately indifferent to serious medical needs "when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citations and internal quotation marks omitted). Here, Plaintiff has not alleged or shown that he was denied medical care, that medical care was delayed or that Warden Pollard intentionally interfered with his medical treatment. In fact, he acknowledges that when he sought medical care due to his heart beating "real fast & hard" and his "kidney's hurt bad" when he had contracted COVID-19 in December 2020, (Dkt. No. 1, Compl. at 39), he was taken to "TTA-Medical for an E.K.G." which indicated "no changes in heart." (*Id.* at 13 ¶¶ 21. 22.) Because Plaintiff has not sufficiently alleged or provided any facts to establish a violation based on his "serious medical needs", the Court declines to address it.

infected with COVID-19, thereby exposing him to the virus, with which he was infected.[4] (Dkt. No. 1, Compl. at 3-4, 12-14.)

### Factual Background

Plaintiff, in custody of the California Department of Corrections and Rehabilitation, was housed in Facility A, Building A1 in the Enhanced Out Patient ("EOP") housing program at RJD in San Diego, CA from August 6, 2020 to March 14, 2021. (Dkt. No. 90-3, D's SSMF[5] Nos. 1, 3.[6]) Defendant was the warden of RJD at the time of the alleged incident. (*Id.*, No. 2.)

On January 31, 2020, the U.S Secretary of Health and Human Services declared that a "public health emergency exists and has existed since January 27, 2020." (Dkt. No. 91, D's RJN, Ex. 2 at 11.[7]) On March 4, 2020, the Governor of California issued a

---

[4] In opposition, Plaintiff raises a failure to act claim, (Dkt. No. 95 at 6), which was not raised in his complaint; therefore, the Court declines to address it. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) (finding that plaintiffs could not assert a theory of liability in a motion for summary judgment which was not raised in the complaint because defendant would be prejudiced in that the new theory "require[d] that the defendant develop entirely different defenses."); *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

[5] Separate Statement of Material Facts

[6] Plaintiff did not respond to the Separate Statement of Material Facts.

[7] Defendant asks the Court to take judicial notice of five exhibits: (1) Proclamation of a State of Emergency by California Governor Newsom, dated March 4, 2020; (2) Determination that a Public Health Emergency Exists by the Secretary of Health and Human Services, dated January 31, 2020; (3) "CDC Museum COVID-19 Timeline," published to the CDC website, including general information about COVID-19's history in the United States and around the world from December 12, 2019, through July 8, 2022, available at https://www.cdc.gov/museum/timeline/covid19.html; (4) Printout of historical data, published by the CDC to its COVID Data Tracker website, reflecting the cumulative number of COVID-19 cases reported in the United States from January 29, 2020, to March 15, 2023, available at https://covid.cdc.gov/covid-data-tracker/#cases-deaths-testing-trends (last visited March 17, 2023); and (5) California Correctional Health Care Services ("CCHCS"), COVID-19: Interim Guidance for Health Care and Public Health Providers, Version 2.0 dated April 3, 2020. (Dkt. No. 91.) Plaintiff did not file an opposition.

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The

Proclamation of a State of Emergency due to the COVID-19 outbreak. (*Id.*, Ex. 1 at 5.) On March 11, 2020, the World Health Organization declared COVID-19 a pandemic. (*Id.*, Ex. 3 at 20.) On March 13, 2020, the President of the United States declared a nationwide emergency. (*Id.*) In mid-April, the United States had reported 673,325 cases and 34,394 COVID-related deaths. (*Id.*, Ex. 4 at 63, 69.) Around December 9, 2020, the United States had reported 15,778,0F6 (sic) cases and 298,088 COVID-related deaths. (*Id.*)

Beginning on March 26, 2020, Warden Pollard identified isolation/quarantine cells in Facilities A, B, C, and D to isolate and/or quarantine inmates to separate exposed or ill inmates from uninfected ones in order to prevent other inmates from contracting COVID-19. (Dkt. No. 90-5, Pollard Decl. ¶¶ 2, 10.) The identified cells were to remain vacant until a need to house sick inmates arose. (*Id.* ¶ 2.) The selected cells were solid-door and solid-wall cells which were identified as preferred cells to be used for isolation and quarantine purposes by California Correctional Health Care Services ("CCHCS")[8]. (*Id.*) Relevant to this case, on March 26, 2020, Warden Pollard identified cells 101, 102, 201 and 202 in Facility A, Building A1 as isolation/quarantine cells. (*Id.* ¶ 10; Dkt. No. 90-5, Pollard Decl., Ex. 1.) On April 29, 2020, Warden Pollard revised the isolation/quarantine cells in Facility A, Building A1 and identified cells 148, 149, 150, 249, and 250 as isolation/quarantine cells. (Dkt. No. 90-5, Pollard Decl. ¶ 4; *id.*, Ex. B.) On April 30, 2020, Warden Pollard again revised the isolation/quarantine cells in Facility A, Building

---

Court finds that all five exhibits are proper for judicial notice as they are publicly available government website pages. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities . . ., and neither party disputes the authenticity . . . or the accuracy of the information displayed therein."); *Guilfoyle v. Beutner,* 2:21-cv-05009-VAP (MRWx), 2021 WL 4594780, at *24 (C.D. Cal. Sept. 24, 2021) (taking judicial notice of public website as they are authored by government agencies and their authenticity cannot be questioned reasonably). Therefore, the Court GRANTS Defendant's request for judicial notice.

[8] CCHCS "provides care that includes medical, dental and mental health services to California's incarcerated population at all 34 California Department of Corrections and Rehabilitation (CDCR) institutions statewide." https://cchcs.ca.gov/.

A1 and identified cells 101, 102, 103, 201, and 202 as isolation/quarantine cells. (Dkt. No. 90-5, Pollard Decl. ¶ 5; *id.*, Ex. C.) On June 12, 2020, Warden Pollard reiterated that the isolation/quarantine cells in Facility A, Building A1 were cells 101, 102, 103, 201, and 202. (Dkt. No. 90-5, Pollard Decl. ¶ 6; *id.*, Ex. D.) On October 14, 2020, Warden Pollard revised the isolation/quarantine cells in Facility A, Building A1 and identified cells 101, 102, 103, 104, 105, 106, 107, 108, 109, 201, 202, 203, 204, 205, 206, 207, 208, and 209 as isolation/quarantine cells.[9] (Dkt. No. 90-5, Pollard Decl. ¶ 7; *id.*, Ex. E.) Besides designating isolation/quarantine cells, Defendant was not involved in assigning inmates to particular cells including housing an inmate in Facility A, Building A1, cell 227 on December 6, 2020. (Dkt. No. 90-5, Pollard Decl. ¶¶ 8, 9.)

Warden Pollard also took substantial steps to minimize the risk of COVID-19 exposure including, but not limited to "screening all individuals entering RJD for known COVID-19 symptoms, placing markers on the ground at six-foot intervals to remind inmates to maintain distance from others, implementing cell feeding or feeding one housing unit at a time, restricting the number of inmates allowed in dayrooms at any one time, increasing sanitation of tables, showers, and chairs, placing hand sanitizer stations throughout RJD, and providing cloth masks to all inmates and staff. Inmates and staff were also educated on COVID-19 and best practices to minimize the risk of contracting COVID-19 through, in part, COVID-19 informational posters displayed throughout RJD." (*Id.* ¶ 10.) On December 8, 2020, Plaintiff took a COVID-19 test and was informed in a Patient Letter dated December 11, 2020 that he tested positive for COVID-19. (Dkt. No. 90-4, Burns Decl., Ex. D.)

In the complaint, Plaintiff alleges that in April or May 2020, Warden Pollard was deliberately indifferent to his health and safety when he designated cells 101 through 110

---

[9] In reply, without providing any additional evidence or explanation, Defendant asserts, for the first time, that Building A1 did not become an isolation unit until January 2021. (Dkt. No. 97 at 5.) Instead, the Court relies on the evidence provided by Defendant in its moving papers showing that certain cells in Building A1 were designated isolation/quarantine cells starting in March 2020.

and 201 through 210 of Building A1 as quarantine locations for inmates infected with COVID-19. (Dkt. No. 1, Compl. at 3, 12.) He claims that around December 6 or 7, 2020, prison officials placed an inmate infected with COVID-19 in cell 227 for a few hours. (Dkt. No. 1, Compl. at 3, 12-13.) Then, he asserts that around December 7 or 8, 2020, all inmates in Building A1 were tested for COVID-19 and 99% of the inmates tested positive with COVID-19. (*Id.*) On December 11, 2020, he experienced "chest pains, racing heart beats" and was taken to medical for an EKG which showed "no changes" to his heart. (*Id.* at 13 ¶¶ 21, 22; *id.* at 39.) He also claims that he fell within the high-risk category of COVID-19. (*Id.* ¶ 28.) Plaintiff additionally argues that he and other inmates filed grievances objecting to placing inmates with COVID-19 in the same area as non-COVID infected inmates. (*Id.* at 3.) Finally, he complains Defendant failed to follow "control disease policy" by placing infected COVID-19 inmates in with the general population by designating certain cells in Building A1 as isolation/quarantine cells knowing it would expose Plaintiff to COVID-19. (*Id.* at 10.)

He seeks compensatory damages as well as a transfer to another facility and to be vaccinated with the COVID-19 vaccine. (*Id.* at 13 ¶ 30; 15.) Since the filing of the complaint, Plaintiff received two doses of the vaccine for COVID-19 in October 2021 and was transferred and is currently housed at California Medical Facility in Vacaville, ("CMF"), since September 2021. (*See* Dkt. No. 46-2, Ebert Decl. ¶¶ 6, 12; *see also* Dkt. No. 47.)

## Discussion

### A.   Legal Standard on Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp.,* 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

**B.    42 U.S.C. § 1983**

42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United

States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012). Section 1983 applies to a person who "subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . ." 42 U.S.C. § 1983; *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1982) (causation requirement of § 1983 is satisfied only if a plaintiff demonstrates a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act he was legally required to do that caused the deprivation complained of) (quoting *Johnson v Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

As part of his Eighth Amendment claim, Plaintiff alleges that Defendant placed a COVID-positive inmate in cell 227, a non-isolation/quarantine cell, on December 6, 2020 and he contracted COVID-19 on December 8, 2020. (Dkt. No. 1, Compl. at 3, 12-13.) Defendant moves for summary judgment arguing that Warden Pollard did not direct the placement of an inmate in cell 227 and was not personally involved. (Dkt. No. 90-1 at 12-13.) Plaintiff appears to accuse Defendant of perjury for raising an argument not raised by the pleadings. (Dkt. No. 95 at 7-8 (claim that Plaintiff "appears to also ALLEGE in the alternative that the Warden Pollard placed a Covid-Positive inmate in a non-isolation/quarantine" as untrue and amounts to perjury.) However, the complaint clearly states that the Eighth Amendment claim is partially based on the temporary placement of a COVID-19 inmate in cell 227. (Dkt. No. 1, Compl. at 3, 12-13.) Accordingly, because Plaintiff does not oppose Defendant's argument nor provide any competing evidence to create a genuine issue of material fact regarding Warden Pollard's alleged placement of a COVID-19 infected inmate in cell 227, the Court GRANTS Defendant's motion for summary judgment on this issue. *See Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) (dismissing defendants that had no personal involvement in violating the plaintiff's constitutional rights).

Next, Defendant argues that Plaintiff has not provided any evidence that he contracted COVID-19 because of Warden Pollard's decision to designate isolation/quarantine cells in Facility A, Building A1. The Court agrees. In opposition, Plaintiff fails to provide any relevant and material evidentiary support that the decision to designate certain cells in Building A1 caused him to contract COVID-19. For example, he does not provide any facts as to the location of these isolation/quarantine cells in relation to his cell, to what levels these cells were occupied by COVID-19 infected inmates during the time he was at Building A1 between August 2020 through December 2020 when he contracted COVID-19, and whether he interacted with the COVID-19 infected inmates while housed in Building A1. Accordingly, the Court GRANTS Defendant's motion for summary judgment for failing to show that Warden Pollard's decision to designate isolation/quarantine cells in Facility A1 caused him to contract COVID-19. Therefore, the Court GRANTS Defendant's motion for summary judgment on the Eighth Amendment claim for failing to demonstrate causation. *See Arnold*, 637 F.2d at 1355.

However, even if Plaintiff could establish that Warden Pollard caused him to contract COVID-19, he does not raise a genuine issue of material fact to establish an Eighth Amendment violation based on deliberate indifference to his health and safety.

**C.    Eighth Amendment**

The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits conditions of confinement that involve the "unnecessary and wanton infliction of pain." *Whitley v. Albers,* 475 U.S. 312, 319 (1986); *see Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976). "The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). Prison officials have a constitutional obligation to protect inmates from a "serious, communicable disease." *See Helling*, 509 U.S. at 32-34; *see also Hutto v. Finney*, 437 U.S. 678, 682-83 (1978) (affirming Eighth Amendment violation, in part, because prisoners were kept in crowded cells with others suffering from infectious diseases, such

as hepatitis and venereal disease); *Andrews v. Cervantes*, 493 F.3d 1047, 1050 (9th Cir. 2007) (recognizing an Eighth Amendment claim based on alleged policy of not screening inmates for serious infectious diseases and for housing contagious and healthy individuals together during a known "epidemic of hepatitis C").

A prisoner claiming an Eighth Amendment violation based on conditions of confinement "must show (1) that the deprivation he suffered was 'objectively, sufficiently serious'; and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Farmer*, 511 U.S. at 834).

Defendant moves for summary judgment solely on the second prong of whether he was deliberately indifferent to Plaintiff's health and safety. (*See* Dkt. No. 90-1.) He does not challenge the first prong of the Eighth Amendment analysis that the exposure to COVID-19 posed a serious risk of harm. In fact, a number of courts have concluded that exposure to COVID-19 poses a serious risk of harm. *See Bryant v. Kibler*, No. 2:21-CV-0060-TLN-DMC-P, 2023 WL 199277, at *5 (E.D. Cal. Jan. 17, 2023) (citing cases) ("Generally, there is no question that Covid-19 is a serious communicable disease and poses a substantial risk of serious harm to those exposed."); *Torres v. Milusnic*, 472 F. Supp. 3d 713, 728 (C.D. Cal. 2020) (substantial risk of exposure to COVID-19 is inconsistent with contemporary standards of human decency); *Plata v. Newsom*, 445 F. Supp. 3d 557, 559 (N.D. Cal. 2020) ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners).

On the second prong, Warden Pollard contends that he was not deliberately indifferent to Petitioner's health and safety because he responded reasonably to the risk of COVID-19 by following CCHCS' COVID-19 Interim Guidance for Health Care and Public Health Providers ("CCHCS' Interim Guidance") when he designated

isolation/quarantine cells.[10] (Dkt. No. 90-1 at 14-16.) He also claims he implemented a number of other measures to combat the spread of COVID-19 within the facility. (*Id.*) In opposition, Plaintiff repeatedly objects contending the parties have not fully completed discovery blaming the Court and Defendant. (*See* Dkt. No. 95 at 3, 7, 9.) Defendant replies that Plaintiff's argument is without merit because he failed to conduct any discovery in the case within the deadlines set forth in the Court's scheduling order. (Dkt. No. 97 at 3.)

On August 12, 2022, the Magistrate Judge issued a scheduling order setting deadlines for discovery. (Dkt. No. 63.) Fact discovery closed on January 30, 2023 and expert discovery closed on April 6, 2023. (*Id.*; Dkt. No. 74 at 8.) During discovery, Plaintiff never requested any discovery. (Dkt. No. 97-1, Burns Decl. ¶ 4.) Moreover, Defendant did not prevent Plaintiff from conducting discovery. (*Id.* ¶ 5.) Despite his complaints that discovery has not been fully completed, Plaintiff does not explain why he never propounded any discovery on Defendant during the discovery deadlines set by the Court, and even if he was deprived or denied discovery, what discovery he would seek that would support his opposition. (*See id.*) The Court finds Plaintiff's comment that discovery was denied or not completed to be without merit.

Notwithstanding the discovery issue, Plaintiff responds that Warden Pollard failed to comply with CCHCS' Interim Guidance by designating cells in Building A1, where he was housed, as isolation/quarantine cells because that decision failed to separate COVID-19 infected inmates from non-COVID-infected inmates. (Dkt. No. 95 at 8, 10, 36-37.)

---

[10] In reply, Defendant maintains, for the first time, that Plaintiff has not shown that Warden Pollard knew of a serious threat to Plaintiff's health when he designated isolation/quarantine cells in Building A1 based on Plaintiff's grievance and a personal memo to Warden Pollard. (Dkt. No. 97 at 5.) A party may not raise new arguments in a reply and the Court declines to address it. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("[D]istrict court[s] need not consider arguments raised for the first time in a reply brief."); *see also FT Travel--New York, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) ("Courts decline to consider arguments that are raised for the first time in reply.") (collecting cases).

Further, Plaintiff notes that CCHCS' Interim Guidance provided for an Exposure Control meeting as well as a phone number to call if Warden Pollard had questions; therefore, Plaintiff maintained Warden Pollard knew or should have known not to designate cells in Building A1, where non-infected inmates resided, as isolation/quarantine cells for COVID-infected inmates.  (*Id.* at 10, 36.)

On the second deliberate indifference prong, a prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Under this standard, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.  The Eighth Amendment requires "reasonable safety." *Id.*

As it concerns prison officials' response to the COVID-19 pandemic, "[t]he key inquiry is not whether prison officials perfectly responded, complied with every CDC guideline, or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they 'responded reasonably to the risk.'" *Foster v. Shirley*, Case No.: 1:21-cv-00020-DAD-SAB (PC), 2021 WL 2457655, at *3 (E.D. Cal. June 16, 2021), *report and recommendation adopted by* 2021 WL 4061650 (E.D. Cal. Sept. 7, 2021) (citing *Stevens v. Carr*, No. 20-C-1735, 2021 WL 39542, at *4 (E.D. Wis. Jan. 5, 2021)); *Allen v. Cal. Dep't of Corrections*, Case No. 1:23cv213-SAB(PC), 2023 WL 2957690, at *5 (E.D. Cal. Apr. 14, 2023), *report and recommendation adopted by* 2023 WL 4089120 (June 20, 2023) (*same*); *Butler v. Cnty. of San Diego*, Case No.: 22-cv-690-MMA (DEB), 2022 WL 11965183, at *7 n.4 (S.D. Cal. Oct. 20, 2022) (*same*); *see Plata*, 445 F. Supp. 3d at 564 ("The question is whether [p]laintiffs have demonstrated that [d]efendants' response to the COVID-19 epidemic is unreasonable.").

According to CCHCS' Interim Guidance, the provision entitled QUARANTINE, relied upon by Plaintiff, provides that "[i]f one or more patients in quarantine develops

symptoms consistent with COVID-19 infection, follow recommendations for isolation for ill patient(s). Separate the ill-quarantined patients from the well-quarantined patients immediately." (Dkt. No 91, D's RJN, Ex. 5 at 106; Dkt. No. 95 at 37.) The section entitled ISOLATION provides that prison officials should "[p]romptly separate patients who are sick with fever or lower respiratory symptoms from well patients. Patients with these symptoms should be isolated until they are no longer infectious and have been cleared by the health care provider. The preference is for isolation in a negative pressure room; second choice would be isolation in private room with a solid, closed door." (Dkt. No 91, D's RJN, Ex. 5 at 96.) Further, those in medical isolation should be housed in the following order of preference, "[s]eparately, in single cells with solid walls (i.e., not bars) and solid doors that close fully". (*Id.* at 97.) The provision addressing Containment, relied upon by Plaintiff, provides, "[s]topping transmission will require halting movement of exposed patients. The goal is to keep patients who are ill or who have been exposed to someone who is ill from mingling with patients from other areas of the prison . . . ." (*Id.* at 102, Dkt. No. 95 at 36.)

In compliance with CCHCS' Interim Guidance preferences, Warden Pollard identified cells that were solid-door and solid-wall cells in Building A1 and designated them as isolation/quarantine cells. (Dkt. No. 90-5, Pollard Decl. ¶ 2.) Further, Warden Pollard also took a number of measures to prevent and mitigate the spread of COVID-19. (Dkt. No. 90-5, Pollard Decl. ¶ 10.) For instance, he screened all individuals entering RJD for known COVID-19 symptoms, placed markers on the ground at six-foot intervals to remind inmates to maintain distance from others, implemented cell feeding or feeding one housing unit at a time, restricted the number of inmates allowed in dayrooms at any one time, increased sanitation of tables, showers, and chairs, placed hand sanitizer stations throughout RJD, and provided cloth masks to all inmates and staff. (*Id.* ¶ 10.) Inmates and staff were also educated about COVID-19 and best practices to minimize the risk of contracting COVID-19. (*Id.*)

In response, Plaintiff asserts that Warden Pollard's decision to designate isolation/quarantine cell in Building A1, itself, was a violation of the Eighth Amendment. (Dkt. No. 95 at 8.) Plaintiff provides no evidence that Warden Pollard's efforts to comply with CCHCS' Guidelines in designating isolation/quarantine cells were improperly administered or carried out, or that he implemented them in a way that demonstrates a deliberate indifference to a risk to his safety and health. For instance, Plaintiff has not provided any evidence that he was exposed to or was required to co-mingle with COVID-infected inmates that were housed in the isolation/quarantine cells in Building A1.

Because Warden Pollard's decision designating isolation/quarantine cells rested on CCHCS' Guidelines to limit the spread of COVID-19, that decision cannot, without more, demonstrate he was deliberately indifferent to Plaintiff's health and safety. *See Allen*, 2023 WL 2957690, at *5 ("The efforts undertaken demonstrate that Defendants engaged in active conduct to manage the spread of the virus. Even if the response at NKSP has been inadequate, it has not disregarded a known risk or failed to take any steps to address the risk."). Plaintiff has failed to raise a genuine issue of material fact that Warden Pollard acted unreasonably and disregarded an excessive risk to Plaintiff's health and safety when he took steps to limit the spread of COVID-19 by designating isolation/quarantine cells in Building A1. *See Farmer*, 511 U.S. at 845; *McCord v. Haynes*, Case No. C21-5512-JHC-MLP, 2022 WL 2194984, at *4 (W.D. Wash. May 24, 2022), *report and recommendation adopted by* 2022 WL 2192944 (June 17, 2022) (granting summary judgment on deliberate indifference because defendants demonstrated they addressed COVID-19 risks and attempted to mitigate the risks) (citing *Fraihat v. United States Immigr. & Customs Enf't*, 16 F.4th 613, 636-38 (9th Cir. 2021) (finding detainees failed to demonstrate ICE acted with deliberate indifference where ICE complied with CDC interim guidance for its detention facilities, enacted system for reporting suspected or confirmed COVID-19 cases on expedited timeframe, and enabled discretionary release of at-risk detainees); *Hope v. Warden York Cty. Prison*, 972 F.3d

310, 330 (3rd Cir. 2020) ("Nor does a failure to eliminate all [COVID-19] risk establish that the Government was deliberately indifferent to [plaintiffs'] serious medical needs."); *Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020) (finding prison officials took adequate actions to mitigate risk of COVID-19 and that such actions demonstrated a lack of deliberate indifference); *Swain v. Junior*, 961 F.3d 1276, 1287-1289 (11th Cir. 2020) (*same*)); see also *Thibodeaux v. Haynes*, Case No. C21-5326-BHS-MLP, 2022 WL 1094793, at *7 W.D. Wash. Feb. 22, 2022), *report and recommendation adopted by* 2022 WL 1092674 (Apr. 11, 2022) (granting summary judgment on Eighth Amendment claim because there was evidence that the defendants addressed the COVID-19 risks and attempted to mitigate the risks). Accordingly, the Court GRANTS Defendant's motion for summary judgment on the Eighth Amendment claim for deliberate indifference to his health and safety.

Because the Court GRANTS Defendant's motion for summary judgment, the Court need not address whether Warden Pollard is entitled to qualified immunity. *See McCord*, 2022 WL 2194984, at *3 (because the court concluded that the plaintiff had not established that the defendants violated his Eighth Amendment rights, the court declined to address the qualified immunity argument).

## Conclusion

Based on the reasoning above, the Court GRANTS Defendant's motion for summary judgment. The Clerk of Court is directed to close the case. The hearing set on July 29, 2023 shall be vacated.

IT IS SO ORDERED.

Dated: July 24, 2023

Hon. Gonzalo P. Curiel
United States District Judge